No. 21,068.

WILLIAM STORM and EMMA STORM, *Appellees*, v. THE LEAV-
ENWORTH LIGHT, HEAT AND POWER COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. ELECTRICITY—*Uninsulated Wires—Contact with Boy—Death—Negli-
gence for Jury.* Following *Snyder v. Light Co.*, 98 Kan. 157, 157 Pac.
442, it is held that where a company transmits high-voltage electricity
along the streets of a city by wires on which insulation is not main-
tained, the question whether it ought to anticipate that loose wires, or
other articles capable of serving as a conductor, might come in contact
with its lines, so as to endanger persons on the street or sidewalk, is a
question of fact to be determined by the court or jury trying the case
in which it arises.

2. SAME—*Duty of Company to Anticipate Danger—Instruction.* An in-
struction which taken alone might seem to indicate that as a matter of
law the company was bound to such anticipation held not to have been
prejudicial because of other explicit instructions covering the matter.

3. SAME—*Evidence—Finding.* A finding of fact held to have been sup-
ported by the evidence.

4. SAME—*Finding Not Supported by Evidence.* A finding to the effect
that a loose wire had been in contact with the wires of an electric-light
company so long that it ought to have discovered it before the occur-
rence of an accident, held not to have been supported by the evidence,
but to have been nonprejudicial.

5. SAME—*Finding of Negligence Construed.* A finding that the com-
pany's wires would not have injured any one using the streets in an
ordinary way, or in a way reasonably to have been foreseen, held not to
mean that the throwing of a loose wire across them could not have
been anticipated by the exercise of ordinary caution.

Appeal from Leavenworth district court; JAMES H. WEN-
DORFF, judge. Opinion filed December 8, 1917. Affirmed.

*Floyd E. Harper*, of Leavenworth, for the appellant.

*W. W. Hooper*, and *Lee Bond*, both of Leavenworth, for the
appellees.

The opinion of the court was delivered by

MASON, J.: George Storm, a boy fifteen years of age, was
killed by electricity from the wires of the Leavenworth Light,
Heat and Power Company, the contact being brought about
through a small loose wire, with a stone upon the end of it,

which had been thrown over wires some thirty feet from the ground. His father sued the company, alleging that the boy's death was caused by its negligence in not keeping up the insulation. The plaintiff recovered a judgment, and the defendant appeals.

1. Mrs. Snyder, a neighbor, who undertook to assist the boy, was herself severely injured by the shock received through coming in contact with his body. She recovered a judgment against the company, which was affirmed on appeal. (*Snyder v. Light Co.*, 98 Kan. 157, 157 Pac. 442.) The questions of law now presented are largely the same as were passed upon by the court in that case. The defendant maintains that it cannot be held liable for the injury, notwithstanding its omission to keep up the insulation on its wires, because the occurrence was one which it could not reasonably have anticipated. This matter was fully considered in the Snyder case, where the decisions bearing thereon were reviewed at length, the conclusion being reached that whether the company should have anticipated such a result from the lack of insulation was fairly a question for the determination of a jury. Upon this proposition it is only necessary to say that we adhere to the view there expressed.

2. The contention is also made that the trial court took from the jury the question whether the defendant ought to have anticipated the injury, by instructing that it was bound to anticipate that wires or conductors of electricity might be thrown over or come in contact with its lines. Considered by itself the instruction referred to may have been open to this construction. But the jury were explicitly told that the defendant was bound to anticipate such combinations of circumstances and injuries as it might reasonably forecast as likely to happen, taking into account its own experience and that of others, together with what was inherently probable; that the defendant was not liable if it could not reasonably have forecast that such an accident as the one complained of was likely to happen, nor if it could not reasonably have expected that any one would come in contact with its wires. The instructions were substantially the same as in the Snyder case, and taking the charge as a whole we think there is no substantial likelihood of the jury having been misled.

3. The jury were asked whether the defendant's wires which were used for house-lighting purposes were maintained in the manner usual in the case of wires used for similar purposes under like conditions by the federal government and electric light companies in the cities, and if not, in what respect there was a difference. They answered "No." "Not maintained by proper insulation." It is contended that there was no evidence to support these answers. There was abundant evidence that the defendant's wires were originally covered with insulating material, but that in many places, including that where the loose wire lay across them, it had long since worn off and was hanging in strips. A witness who testified that he was an electrician said that at Fort Leavenworth the wires carrying 2,300 volts (the amount carried by the defendant's light wires) had rubber insulation; that he knew of no place in cities outside of Leavenworth where bare wires were used to carry 2,300 volts—that such was not the case in Kansas City. Other evidence was introduced contradicting this testimony, but there was sufficient evidence to support the findings referred to. The question was also asked whether the federal government and electric light companies in other cities used bare wires under similar conditions. The jury replied that they did not know. The objection is made that there was undisputed evidence requiring a negative answer. As already indicated, there was some conflict on the general subject, and the credibility of the testimony referred to, even if not specifically contradicted, was for the determination of the jury.

4. A finding was made to the effect that the wire which hung across the company's wires had been in that position a sufficient length of time so that the defendant ought to have learned that it was there previous to the accident in question. This is also attacked as without support in the evidence. There was some testimony tending to show that George Storm himself threw the small wire over those of the company just before he received the shock, but the witness who gave it was shown to have made contradictory statements, and the jury were justified in finding, as they did, that such was not the fact. Outside of this evidence there was nothing to indicate how long the wire had been in the position in which it was found after the boy's death. The statement of the jury that it had been

there long enough for the company to have discovered it in time to prevent the accident is therefore unsupported. It cannot be assumed, however, that the verdict was affected by this finding, for no such issue was made by the pleadings or submitted in the instructions. The contention of the plaintiff through-out was that the defendant was negligent in failing to have its wires insulated—not in failing to discover the small wire after it had been thrown across the wires carrying the current. The verdict must be deemed to respond to the issue presented, notwithstanding an unsupported finding on a question not involved. (*Saunders v. Railway Co.*, 95 Kan. 537, 148 Pac. 657.)

5. The defendant maintains that judgment in its favor is required by a special finding consisting of the following question and answer:

"Would the wires of defendant have injured any person using the street about them, on the day in question, if said person or persons had used said street in the way that streets or sidewalks are ordinarily used or as reasonably prudent people would foresee that they would be used? No."

If this is interpreted as meaning that the injury would not have occurred if nothing had taken place in the street that could not have been foreseen by reasonably prudent people, it is inconsistent with the verdict. But such an interpretation should not be adopted if any other is fairly open. The question seems to refer to the use of the streets and sidewalks as such, and does not in terms or by any clear implication relate to the throwing of anything across the electric wires. It seems probable that the jury understood that they were asked to say whether the uninsulated condition of its wires could by itself have occasioned injury to drivers of vehicles or pedestrians who were using the streets in the ordinary way. A negative answer to the question as so construed would of course be consistent with the general verdict.

The judgment is affirmed.